UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOHN CHRISTOPHER BLECHA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) No. 4:15-CV-01784-CAS-SPM |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This is an action under 42 U.S.C. § 405(g) or judicial review of the final decision of Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, denying the application of Plaintiff John Christopher Blecha ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). This matter was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). Because I find the decision denying benefits was not supported by substantial evidence, I recommend that the Commissioner's denial of Plaintiff's application be reversed and the case be remanded for further proceedings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. FACTUAL BACKGROUND [2]

Plaintiff was born on July 7, 1962, and has a high school education. (Tr. 29, 83). He has worked in the past in various assembly and quality control jobs, several of which involved lifting up to 150 pounds. (Tr. 30-33). At his first hearing before the administrative law judge ("ALJ"), on December 5, 2012, Plaintiff testified that his condition began to deteriorate after a 2010 motorcycle accident. (Tr. 39). Plaintiff testified that he was terminated from his job for not doing the job completely as a result of worsening injuries from the accident. (Tr. 34). Plaintiff testified that he has tremendous pain and limited movement in his neck; that his back "feels like gravel"; that he has immense pain going down his legs; and that when his back goes out, he has to lie flat and cannot control his bladder or bowels. (Tr. 35-36). He testified that he cannot reach to get dressed and needs assistance to get his shoes and socks on. (Tr. 36). Plaintiff testified that he has an inversion table at home that he uses about every hour or two to help decompress his discs and give him relief from his back pain. (Tr. 41-42). He uses it for five to eight minutes at a time. (Tr. 42). He spends most of the day lying down. (Tr. 43). Plaintiff testified that he can sit for about 20 minutes before lying down. (Tr. 44). Plaintiff also testified that he has anxiety, depression, and sleep problems. (Tr. 37).

At his second hearing before the ALJ, on April 9, 2014, Plaintiff testified that his legs give out on him frequently if he stands for long periods of time. (Tr. 60). He testified that he has crushing pressure in his legs as soon as he stands up or sits at a table, and that he cannot be on his feet for ten or fifteen minutes. (Tr. 68). He testified that he uses his inversion table several times a

---

[2] Although the undersigned has reviewed the entire record, this section does not contain an exhaustive description of the facts in the administrative record. The undersigned focuses, as do the parties, on representative records and on the facts most relevant to the issues raised in the parties' briefs.

day; uses morphine and hydrocodone (with significant side effects of dehydration, dizziness, and constipation); gets steroid injections every two to three months, with relief lasting for about two weeks; sees a chiropractor; and uses a transcutaneous electrical nerve stimulation ("TENS")[3] unit almost daily. (Tr. 62-64). He also testified that he sees a psychiatrist and takes lorazepam for anxiety; he had taken other medications but discontinued them due to side effects. (Tr. 58-59, 64-66).

Plaintiff's medical records show that throughout the alleged disability period beginning in June 2011, Plaintiff consistently complained of moderate to severe lower back pain that was exacerbated by sitting, standing, or moving, and that was sometimes accompanied by pain, numbness, and/or weakness in his legs. (Tr. 337-38, 354, 395-96, 412, 451-52, 458, 466, 508, 510-12, 513-14, 522-23, 527, 528, 535, 546, 549, 550, 552-53, 557, 560, 564, 565-66, 570, 584, 589, 592, 594, 595, 615, 711, 728, 737, 819-20, 825, 856, 887, 891, 898, 911, 922, 951, 1032). Plaintiff also complained at times that episodes of severe back pain were associated with loss of control of his bladder and bowels, though later notes show that those symptoms improved with timed voiding and a "good bowel regimen." (Tr. 412, 458, 508, 512). Plaintiff also sought treatment for neck pain and stiffness throughout the disability period (Tr. 353-57, 395-96, 412, 450, 466, 543), with a cervical discectomy in December 2011 providing some improvement. (Tr. 450, 508, 514, 546). Beginning in 2012, Plaintiff also began seeing both a psychologist and a psychiatrist for treatment of anxiety, stress, irritability, poor sleep, and depression, symptoms that he often described as being related to his pain and limited mobility. (Tr. 535-36, 549-50, 556-559, 565-66, 570, 571-72, 578-79, 580-81, 582-83, 586, 596-97, 598-99, 602-05, 881-84, 885-89, 901-02, 909, 1029-30).

---

[3] TENS is "a method of reducing pain by passage of an electric current." *Stedman's Medical Dictionary* 1838 (28th ed. 2006).

Plaintiff's physical examination findings have been mixed, with findings at some visits of muscle spasm, tenderness, abnormal gait, decreased lower extremity strength, decreased sensation in the lower extremities, positive straight leg test, and/or limited range of motion (Tr. 353, 356-57, 395, 412, 455, 466, 510, 525, 592, 712, 822, 857, 947); and findings at other visits of normal gait, strength, and/or range of motion. (Tr. 412, 452, 857, 1033-34). An MRI performed on December 3, 2011, showed various mild to moderate abnormalities and degenerative disc disease in the lumbar spine, and imaging performed in September 2012 showed mild degenerative disc changes. (Tr. 420, 427-28). However, it was noted in September 2012 that the MRI did not reveal problems that could be effectively treated with surgery. (Tr. 517). It was also noted that the MRI did not explain Plaintiff's significant symptoms. (Tr. 517).

Plaintiff's diagnoses have included degenerative disc disease, lower back pain, neck pain, pain disorder associated with general medical condition and psychological factors, mood disorder, major depressive disorder, and anxiety. (Tr. 337-38, 458, 508, 510, 519, 526, 536, 549, 559, 565-66, 571-72, 578-79, 580-81, 586, 591, 610, 820, 823, 883, 901, 910-11, 923, 940, 950, 953, 1030). Plaintiff has consistently been prescribed various narcotic and non-narcotic pain medications to attempt to treat his neck and back pain, including morphine, Vicodin (hydrocodone/acetaminophen), Flexeril, and Gabapentin. (Tr. 337-38, 453, 458, 479, 503-04, 509, 516, 519, 534, 539, 567-68, 582-83, 589, 591, 609, 656, 821, 823, 826, 881, 884, 889, 921, 948, 950, 1029). He has also undergone several lumbar epidural steroid injections (Tr. 895, 933, 944, 970, 971-72, 1040); had chiropractic treatments (Tr. 395-96, 458); seen a physical therapist and done physical therapy exercises at home (Tr. 856, 891-92, 894-95, 898-900); used a TENS unit at home (Tr. 464-67, 555); and used an inversion table at home (Tr. 550). His treatment providers sometimes noted that he arrived at his visits using a cane, walker, walking stick, or wheelchair.

4

(Tr. 491, 517, 520, 543, 825). Plaintiff has also been treated with psychogenic medications, including lorazepam, alprazolam, and trazodone (Tr. 459, 479, 503-04, 509, 516, 519, 521, 534, 609, 821, 826, 881, 884, 889, 921, 948), and has attended group therapy sessions to address issues related to his chronic pain and limited mobility. (Tr. 552-55, 561-64, 570).

On May 23, 2014, Dr. Karen S. Hampton, Ph.D., conducted a consultative psychological examination and opined that Plaintiff was able to understand and recall simple instructions; was mildly impaired in the ability to understand and follow through with complex directions and concentration; and was moderately impaired in the ability to adapt to social and work-like settings. (Tr. 1048-51).

## II. PROCEDURAL BACKGROUND

On June 29, 2011, Plaintiff applied for DIB, alleging that he had been unable to work since June 27, 2011, due to back injury, neck injury, and degenerative disc disease. (Tr. 83, 247). His application was initially denied. (Tr. 107). On September 15, 2011, Plaintiff filed a Request for Hearing by an ALJ. (Tr. 114). After a hearing, the ALJ issued an unfavorable decision dated January 11, 2013. (Tr. 85-98). Plaintiff filed a request for review, and on January 14, 2014, the Appeals Council remanded the case for further evaluation. (Tr. 99-101). After a supplemental hearing, the ALJ issued another unfavorable decision dated July 2, 2014. (Tr. 9-25). On September 3, 2014, Plaintiff filed a timely request for review. (Tr. 7). On November 16, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the

impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff met the insured status requirements of the Act through December 31, 2016; that Plaintiff had not engaged in substantial gainful activity since June 27, 2011, the alleged onset date; that Plaintiff had the severe impairments of degenerative disc disease/degenerative joint disease of the lumbar spine, residuals of cervical fusion, depression NOS, and anxiety NOS; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 14-16). The ALJ found that Plaintiff had the RFC to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently) as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff must be allowed the option of alternating between sitting and standing every 30 minutes while carrying out work duties; can sit, stand, and walk in combination for a total of eight hours per day; should never climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; can occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extremely cold temperatures, vibration, and working at unprotected heights. (Tr. 17). The ALJ found that Plaintiff was able to understand, remember, and carry our simple instructions and non-detailed tasks; should not work in a setting which includes constant/regular contact with the general public; and should not perform work which includes more than infrequent handling of customer complaints. (Tr. 17). At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 19). However, at Step Five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including mail sorter and price marker. (Tr. 20).

## V. DISCUSSION

### A. Standard for Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B. The ALJ's Consideration of Plaintiff's Pain in Determining the RFC

Plaintiff first argues that the ALJ failed to properly consider his pain in assessing his RFC. Specifically, Plaintiff argues that the ALJ did not properly evaluate the objective evidence supporting his complaints of pain; failed to evaluate the role Plaintiff's psychological conditions of pain disorder, depression, and anxiety played in contributing to his pain; and failed to evaluate

9

the side effects of his chronic pain medication. Plaintiff argues that because the ALJ did not properly consider this evidence, the ALJ's RFC is not supported by substantial evidence. The undersigned agrees.

In evaluating a plaintiff's subjective complaints of pain, the ALJ must consider several factors, including "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Moore*, 572 F.3d at 524 (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). "'An ALJ who rejects subjective complaints must make an express credibility determination explaining the reason for discrediting the complaints.'" *Moore*, 572 F.3d at 524 (quoting *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000)).

After review of the record as a whole, it does not appear that the ALJ's analysis of the credibility of Plaintiff's subjective complaints is based on substantial evidence. In discounting the credibility of Plaintiff's complaints of pain, the ALJ found that "[t]here are few abnormal objective findings of record" and that "[t]he medical records show no objective abnormalities which support the claimant's claim that he has symptoms and limitations so severe that he cannot engage in any type of work activity." (Tr. 18). Those findings do not appear to be supported by the record. The ALJ properly recognized that objective medical evidence that fails to substantiate a Plaintiff's complaints is one proper consideration to use in assessing Plaintiff's credibility. *See, e.g., Goff*, 421 F.3d at 792. However, as Plaintiff points out, it appears that in assessing Plaintiff's pain, the ALJ disregarded the significant objective medical evidence in the record that *does* support Plaintiff's complaints of pain, including Plaintiff's frequent diagnoses of pain disorder, anxiety,

10

and depression; Plaintiff's history of aggressive medical and surgical treatment for pain; and the positive physical examination findings in the record, including findings of muscle spasms, abnormal gait, and limited range of motion. In *Cox v. Apfel,* the Eighth Circuit held that even where a claimant's physicians have been unable to identify a specific physical cause for the amount of pain claimed, diagnoses of depression and/or chronic pain syndrome can constitute objective medical evidence of pain, particularly when combined with a history of pain management and drug therapy. 160 F.3d 1203, 1207-08 (8th Cir. 1998). Reversing the ALJ's decision to discount allegations of pain based on a lack of objective findings and a clear explanation for Plaintiff's pain, the Eighth Circuit stated:

> [Cox] has been repeatedly diagnosed with chronic low back pain and depression which cause her to feel exaggerated levels of pain. Depression, diagnosed by a medical professional, is objective medical evidence of pain to the same extent as an X-ray film. *See* 20 C.F.R. §§ 404.1508, 404.1528. Another objective medical fact supporting Cox's subjective complaints of pain is the consistent diagnosis of chronic lower back pain, coupled with a long history of pain management and drug therapy, including the implantation of the intrathecal morphine pump. It is obvious that physicians have determined Cox was experiencing great pain. *See Bakalarski v. Apfel*, No. 97–1107, 1997 WL 748653 (10th Cir. 1997) (consistent diagnosis of chronic pain syndrome can serve as an objective basis for pain).

*Id. See also O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003) (remanding and noting that "from the medical records as a whole, it appears that although the physicians 'have been unable to identify a specific physical cause for the amount of pain claimed by [O'Donnell] . . . [i]t is obvious that [they] have determined [she] was experiencing great pain") (quoting *Cox*, 160 F.3d at 1207-08). *Cf. Reinhart v. Sec'y of Health & Human Servs.*, 733 F.2d 571, 572 (8th Cir. 1984) (reversing and remanding where the ALJ focused on the normal laboratory testing regarding the claimant's spine and paid only "lip service" to evidence that Plaintiff had diagnoses of a psychological illness that could be causing her pain).

11

Here, although Plaintiff's physicians have noted that the MRI findings do not fully explain Plaintiff's lower back pain and that he is not a candidate for lower back surgery, they have not questioned that he is experiencing great pain that warrants significant interventions. Much like the physicians in *Cox,* Plaintiff's physicians repeatedly diagnosed him with pain disorder associated with psychological factors and general medical condition (Tr. 458, 565-66, 571-72, 578-79, 580-81, 910-11, 953), as well as anxiety, mood disorder, and/or major depressive disorder (Tr. 458, 536, 571-72, 578-79, 586, 593, 596-97, 598-99, 883, 901, 909, 910-11, 923, 940, 946-47, 1030)—diagnoses that appear to constitute objective evidence in support of his complaints of pain. Also as in *Cox,* Plaintiff's treatment providers' aggressive treatment of Plaintiff's pain with narcotic and non-narcotic medications, injections, surgery, chiropractic care, physical therapy, psychotherapy, psychotropic medications, and other interventions constitutes objective evidence of his pain. (Tr. 337-38, 395-96, 453, 458, 464-67, 479, 503-04, 509, 516, 519, 534, 539, 550, 552-555, 561-64, 567-68, 570, 582-83, 589, 591, 609, 656, 821, 823, 826, 856, 881, 884, 889, 891-92, 894-95, 898-900, 921, 933, 944, 948, 950, 970, 971-72, 1029, 1040). In addition, the record contains several abnormal physical examination findings that constitute objective evidence of Plaintiff's pain, including findings of abnormal gait, limited range of motion, positive straight leg test, decreased sensation in the lower extremities, and muscle spasms. (Tr. 353, 356-57, 395, 412, 455, 466, 510, 525, 592, 712, 822, 857-58, 947). It does not appear that the ALJ considered the above evidence in his credibility analysis; instead, he appears to have focused on isolated instances of normal physical examination findings. (Tr. 18). When read in light of the record as a whole and the Eighth Circuit's guidance in *Cox*, the ALJ's determination that there are few abnormal objective findings of record is not supported by substantial evidence in the record as a whole.

Second, the ALJ's assessment of the effectiveness of Plaintiff's medications and other treatments does not appear to be fully supported by the record. The ALJ reasonably noted the evidence that Plaintiff's treatment improved with some treatment, including steroid injections, use of the TENS unit, and use of the inversion table. (Tr. 18). However, the ALJ did not appear to consider the temporary nature of that relief or whether the use of those treatments would interfere with Plaintiff's ability to work. For example, the ALJ did not discuss the evidence that Plaintiff's steroid injections provide him some relief for only two weeks and that he is permitted to get such injections only every two to three months. (Tr. 63-64). Additionally, the ALJ did not discuss Plaintiff's reports that although he gets some "some short-term relief" from the inversion table, he uses it six or seven times a day, and his "whole day" is consumed with using it—something that would appear to be inconsistent with the ability to perform light work as determined by the ALJ. (Tr. 61-62, 550). In addition, the ALJ did not discuss the fact that Plaintiff takes morphine and other narcotic medications and has significant side effects from those medications, including significant bowel problems and anxiety. (Tr. 574, 801, 916).

Third, the ALJ's findings with regard to Plaintiff's work history do not appear to be supported by the record. The ALJ discounted Plaintiff's credibility in part because Plaintiff "alleged that he stopped work due to his condition but, at the first hearing, admitted that he had been fired." (Tr. 19). However, a review of Plaintiff's testimony at the first hearing shows that he testified that he was "terminated for not doing the job completely" because of progressively worsening physical problems following his April 2010 motorcycle accident, including lower back and neck injuries, problems with his legs, and loss of control of his bladder and bowels. (Tr. 34). In addition, as the ALJ acknowledged, Plaintiff had a good work record from 1999 to 2011. (Tr. 19). Plaintiff's testimony that he was terminated after many years of a good work record, due to

his worsening physical problems and resulting difficulty in doing the job, does not undermine the credibility of his subjective complaints, but bolsters it. The ALJ also found that it appeared that Plaintiff was exaggerating the amount of the weight he lifted in his past work, but it is unclear from the record how the ALJ reached that conclusion. (Tr. 19).

The undersigned acknowledges that the ALJ did consider some other credibility factors in discounting the credibility of Plaintiff's complaints of pain. For example, the ALJ reasonably considered the lack of opinions from a treating or examining doctor that Plaintiff was disabled or experienced limitations that would preclude all work; the fact that Plaintiff filed for unemployment benefits, which indicates an ability to work; and the fact that some of Plaintiff's daily activities may be inconsistent with some of his allegations. (Tr. 18-19). However, when the credibility analysis as a whole is evaluated in light of the record as a whole, the undersigned cannot say that it is supported by substantial evidence.

For all of the above reasons, the undersigned finds that the ALJ did not conduct a proper analysis, supported by substantial evidence, of the credibility of Plaintiff's subjective complaints of pain. Plaintiff's complaints, if credible, would preclude a finding that Plaintiff is capable of work at the RFC level in the ALJ's decision. Thus, the undersigned recommends that the case be remanded for the ALJ to perform a credibility analysis in which he makes clear that he has considered all of the relevant credibility factors and all of the medical evidence concerning Plaintiff's pain and the effect it has on his ability to work.

Furthermore, the undersigned notes that it does not appear that the record contains any medical evidence that addresses Plaintiff's physical ability to function in the workplace and that supports the RFC. Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, RFC is a medical question. *Hutsell v. Massanari,* 259 F.3d

707, 711 (8th Cir. 2001). Thus, although the ALJ is not limited to considering medical evidence, "some medical evidence 'must support the determination of the claimant's [residual functional capacity], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" *Id.* at 712 (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). *See also Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace."). An RFC assessment that is "not properly informed and supported by 'some medical evidence' in the record" cannot stand. *Hutsell*, 259 F.3d at 712.

Here, the only medical opinion evidence in the record that addresses Plaintiff's physical ability to function in the workplace is a July 23, 2014 "Assessment Physician Review" from Gregory Frey, M.D., at Assurant Employee Benefits, which post-dates the ALJ's decision. (Tr. 1059-65).[4] Dr. Frey reviewed Plaintiff's records and opined that in 2013, Plaintiff was "likely physically capable of at least full time sedentary work with some light work capabilities." (Tr. 1064).[5] Dr. Frey did not specify what light work capabilities Plaintiff might have. This opinion does not appear to support the ALJ's RFC finding that Plaintiff is capable of performing light work, including occasionally lifting and carrying 20 pounds occasionally and ten pounds frequently, with some additional limitations such as a sit/stand option every 30 minutes.

---

[4] This evidence was submitted to the Appeals Council. (Tr. 6).

[5] "Sedentary" work was defined on the form as follows: "exerting up to 10 lbs of force occasionally (occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition existing from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." (Tr. 1065). This is similar, though not identical to, the description of sedentary work given in the relevant regulations. *See* 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *3 (July 2, 1996).

The undersigned recognizes that in some cases, mild or unremarkable objective medical findings and other medical evidence may constitute sufficient medical support for an RFC finding, even in the absence of any relevant medical opinion evidence. *See, e.g.*, *Steed v. Astrue*, 524 F.3d 872, 875-876 (8th Cir. 2008) (upholding the ALJ's finding that the plaintiff could perform light work based on largely mild or normal objective findings regarding her back condition, despite the fact that the medical evidence was "'silent' with regard to work-related restrictions such as the length of time she [could] sit, stand and walk and the amount of weight she can carry"); *Thornhill v. Colvin*, No. 4:12-CV–1150 (CEJ), 2013 WL 3835830, at *12 (E.D. Mo. July 24, 2013) (holding that medical records supporting the ALJ's statement that "[p]hysical examinations have been essentially unremarkable and reveal normal independent gait with no evidence of spine or joint abnormality or range of motion limitation [or] muscle tenderness" constituted medical evidence in support of a finding that the claimant could perform medium work). Here, however, the record does not contain generally mild or unremarkable objective findings or other medical evidence that tends to support the RFC. Rather, as discussed at length above, the medical evidence in the record appears to support Plaintiff's assertion that he has chronic back pain that significantly impacts his ability to sit, stand, and walk.

For all of the above reasons, the undersigned recommends that this case be remanded for further proceedings.

### C. The ALJ's Assessment of Plaintiff's Severe Impairments

Plaintiff's second argument is that the ALJ failed to properly consider his impairments at Step Two of the analysis. Specifically, Plaintiff claims that the ALJ failed to evaluate whether Plaintiff's diagnosis of pain disorder met the requirements to qualify as a severe impairment at Step Two.

A severe impairment is a medically determinable impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The plaintiff bears the burden of establishing that an impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). For substantially the reasons stated above, there is evidence in the record suggesting that Plaintiff was diagnosed by his medical providers with pain disorder and that his pain disorder significantly limited his ability to function in the workplace. In his decision, the ALJ did not consider whether Plaintiff's pain disorder was a severe impairment.

The Commissioner argues that there is no error, because pain is a symptom rather than a medically determinable impairment. *See* 20 C.F.R. § 404.1569a(a) ("Your impairment(s) and related symptoms, such as pain, may cause limitations of function or restrictions which limit your ability to meet certain demands of jobs."); SSR 96-4p, 1996 WL 374187, at *2 ("No symptom or combination of symptoms by itself can constitute a medically determinable impairment."); SSR 96-8p, 1996 WL 374184, at *6 (discussing "pain" as a "symptom"). However, none of the authorities cited by the Commissioner addresses the question of whether "pain disorder," diagnosed by medical professionals, may be a medically determinable impairment.

The Commissioner also argues that there is no reversible error here because the ALJ adequately evaluated Plaintiff's limitations related to his pain and his mental conditions. As discussed above, however, the undersigned disagrees.

The undersigned recommends that the case be remanded so that the ALJ may consider this evidence, determine whether Plaintiff's pain disorder represents a severe impairment, and determine how it affects Plaintiff's RFC. *Cf. Becker v. Colvin*, No. 4:12CV82 FRB, 2013 WL 5337612, at *19-*20 (E.D. Mo. Sept. 23, 2013) (remanding for the ALJ to determine whether chronic pain syndrome was a severe impairment; emphasizing that the record was "replete with

evidence of the existence of plaintiff's chronic pain," including diagnoses of chronic pain and treatment with narcotic medications).

## VI. CONCLUSION

For the reasons set forth above, the undersigned finds that the decision of the Commissioner was not supported by substantial evidence. Accordingly,

**IT IS HEREBY RECOMMENDED** that decision of the Commissioner of Social Security be **REVERSED** and that this case be **REMANDED** under Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this Report and Recommendation.

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of February, 2017.